UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

AUTO WORLD AUTOMOTIVE SUPERSTORES, INC.,

                           Plaintiff,

  -against-

SALVATORE LIUZZO SCORPO f/k/a SALVATORE
KROEMER, FATOS STATOVCI, LIDIA DELMONACO,
CHRIS DERRICK, AMY MARQUES, STEPHEN JAMES
KATUZNEY, JR., LOCUST MOTORS LLC, AMEL
DURIC, CARS ON MAIN LLC, VEB AUTO SALES LLC,
ALBERT SEJDIU, AFTERMATH STRIPES, LLC,
ANTONIA LENTINI a/k/a ANN LENTINI, and JEFF
MURPHY d/b/a CUSTOM STRIPE,

                        Defendants.

---

**COMPLAINT**

Civil Case No.:


**JURY TRIAL DEMANDED**

---

AUTO WORLD AUTOMOTIVE SUPERSTORES, INC., Plaintiff in the above entitled

action, by and through its attorneys, Towne, Ryan & Partners, P.C., as and for a Complaint herein,

respectfully alleges the following upon information and belief:

## PARTIES

1.    At all times herein relevant, Plaintiff, AUTO WORLD AUTOMOTIVE

SUPERSTORES, INC. (hereinafter referred to as "Plaintiff"), was and is a domestic corporation

existing pursuant to the laws of the State of Connecticut and maintained a principal place of

business at 20 Jennings Road, Hartford, Connecticut 01620.

2.    At all times herein relevant, Plaintiff was and is authorized to do business, and did

conduct business, in Hartford County, State of Connecticut.

3.      Upon information and belief, at all times herein relevant, Defendant, SALVATORE LIUZZO SCORPO (hereinafter referred to as "Defendant Liuzzo"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

4.      Upon information and belief, Defendant Liuzzo is or was formerly known by the name Salvatore Kroemer.

5.      Upon information and belief, at all times herein relevant, Defendant, FATOS STATOVCI (hereinafter referred to as "Defendant Statovci"), was and is a resident of the State of Connecticut located in the County of Middlesex, State of Connecticut.

6.      Upon information and belief, at all times herein relevant, Defendant, LIDIA DELMONACO (hereinafter referred to as "Defendant Delmonaco"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

7.      Upon information and belief, at all times herein relevant, Defendant, CHRIS DERRICK (hereinafter referred to as "Defendant Derrick"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

8.      Upon information and belief, at all times herein relevant, Defendant, AMY MARQUES (hereinafter referred to as "Defendant Marques"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

9.      Upon information and belief, at all times herein relevant, Defendant, STEPHEN JAMES KATUZNEY, JR. (hereinafter referred to as "Defendant Katuzney"), was and is a resident of the State of Connecticut located in the County of New Haven County, State of Connecticut.

10.     Upon information and belief, at all times herein relevant, Defendant, LOCUST MOTORS LLC (hereinafter referred to as "Defendant Locust"), was and is a domestic corporation

existing pursuant to the laws of the State of Connecticut and maintained a principal place of business in the County of Hartford, State of Connecticut.

11.     Upon information and belief, at all times herein relevant, Defendant, AMEL DURIC (hereinafter referred to as "Defendant Duric"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

12.     Upon information and belief, at all times herein relevant, Defendant Duric was and is an owner, principal, member, officer, manager, employee or agent of Defendant Locust.

13.     Upon information and belief, at all times herein relevant, Defendant, CARS ON MAIN LLC (hereinafter referred to as "Defendant COM"), was and is a domestic corporation existing pursuant to the laws of the State of Connecticut and maintained a principal place of business in the County of Hartford, State of Connecticut.

14.     Upon information and belief, at all times herein relevant, Defendant Statovci was and is an owner, principal, member, officer, manager, employee or agent of Defendant COM.

15.     Upon information and belief, at all times herein relevant, Defendant, VEB AUTO SALES LLC (hereinafter referred to as "Defendant VEB"), was and is a domestic corporation existing pursuant to the laws of the State of Connecticut and maintained a principal place of business in the County of Hartford, State of Connecticut.

16.     Upon information and belief, at all times herein relevant, Defendant, ALBERT SEJDIU (hereinafter referred to as "Defendant Sejdiu"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

17.     Upon information and belief, at all times herein relevant, Defendant Sejdiu was and is an owner, principal, member, officer, manager, employee or agent of Defendant VEB.

18.     Defendants Locust Motors LLC, Cars on Main LLC, and VEB Auto Sales LLC are collectively referred to herein as the "Defendant-Wholesalers."

19.     Upon information and belief, at all times herein relevant, Defendant, AFTERMATH STRIPES, LLC (hereinafter referred to as "Defendant Aftermath"), was and is a domestic corporation existing pursuant to the laws of the State of Connecticut and maintained a principal place of business in the County of Hartford, State of Connecticut.

20.     Upon information and belief, at all times herein relevant, Defendant, ANTONIA LENTINI (hereinafter referred to as "Defendant Lentini"), was and is a resident of the State of Connecticut located in the County of Hartford, State of Connecticut.

21.     Upon information and belief, Defendant Lentini is also known by the name Ann Lentini.

22.     Upon information and belief, at all times herein relevant, Defendant Lentini was and is an owner, principal, member, officer, manager, employee or agent of Defendant Aftermath.

23.     Upon information and belief, at all times herein relevant, Defendant Jeff Murphy did and continues to do business individually and under the assumed named Custom Stripe (hereinafter "Defendant Custom Stripe") and maintained a principal place of business in the County of Hampshire, State of Massachusetts.

## JURISDICTION

24.     This is an action for Federal claims based upon violations of the Computer Fraud and Abuse Act, the Economic Espionage Act and the Stored Communications Act, as well as Federal claims for Fraud by Wire and Fraud in Connection with Electronic Mail.  This action also asserts supplemental claims for breach of fiduciary duty, conversion, fraud, negligent misrepresentation, theft of company assets, tortious interference with business relationships, civil

conspiracy, self-dealing, computer crimes, larceny by trick and unjust enrichment pursuant to the statutes and common law of the State of Connecticut.

25.    This Court has subject matter jurisdiction over this action pursuant to multiple Federal statutes, including, but not limited to, 28 U.S.C. § 1331. The fraud claims are brought pursuant to 18 U.S.C. §§ 1037, 1343, 1030, 1962 and 1341.  Additional claims herein are brought pursuant to 18 U.S.C. §§ 1836, 2707, 1962 and 1964.  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §1367(a).

## VENUE

26.    The venue for this action is the District of Connecticut because Plaintiff's principal place of business is within said District and the causes of action arose in said District.

27.    Venue in this District is proper pursuant to 28 U.S.C. §1391(b) and (c).

## JURY DEMAND

28.    Plaintiff hereby demands a jury trial on any triable issues raised in its Complaint by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

29.    At all times herein relevant, Plaintiff was and is an automobile dealership which is engaged in the sales and service of automobiles.

30.    At all times herein relevant, Defendant Liuzzo was employed by Plaintiff and held the title of General Manager.

31.    At all times herein relevant, Defendant Statovci was employed by Plaintiff and held the title of Service Technician.

32.    At all times herein relevant, Defendant Delmonaco was employed by Plaintiff and held the title of Office Manager.

33.     At all times herein relevant, Defendant Derrick was employed by Plaintiff and held the title of Service Manager.

34.     At all times herein relevant, Defendant Marques was employed by Plaintiff and held the title of Office Assistant.

35.     At all times herein relevant, Defendant Katuzney was employed by Plaintiff and held the title of Finance Manager.

36.     Defendants Liuzzo, Statovci, Delmonaco, Derrick, Marques and Katuzney are collectively referred herein to as the "Defendant-Employees".

37.     At all times herein relevant, the Defendant-Employees had access to the Plaintiff's computers, service system, inventory data, financial data, accounting data and other programs used in the course of the Plaintiff's business.

38.     At all times herein relevant, Plaintiff's accounting system, financial system, internal and external inventory systems, service systems and other Dealership data information were solely maintained on, stored in and accessed by Plaintiff's computers (hereinafter, the "computer systems").

39.     At all times herein relevant, Plaintiff took and continues to take reasonable measures to protect and secure its computer systems and the information contained therein.

40.     Upon information and belief, Plaintiff's computer systems are housed in secure servers which require authorized users to enter passwords to access them, and the information contained therein was and is to be accessed and used for the sole benefit of Plaintiff.

41.     At all times herein relevant, Plaintiff maintained policies governing its employees' use of its computer systems and other electronic resources (hereinafter referred to as the "subject policies").

42.    One or more of the subject policies required Plaintiff's employees to protect Plaintiff's confidential company information, customer information, customer records, and additional information and records.

43.    Additionally, one or more of the subject policies prohibited employees' unauthorized use of Plaintiff's computer systems, e-mail system, networks, files, data, customer information, customer records, inventory records, intellectual property, trade secrets, and/or other company information (hereinafter, "computer systems and information") for any purpose other than the advancement of Plaintiff's business and interests.

44.    One or more of the subject policies also prohibited employees' use of Plaintiff's computer systems and information to gain or attempt to gain unauthorized or unlawful access to the company's computers, networks, or systems; to infringe any intellectual property rights; to violate or attempt to violate any law; to conceal a user's identity; to use another user's identity, login credentials, passwords, or other information to access Plaintiff's computer systems and information; and/or to use their positions with the company or its customers for private gain or to advance their personal interests or the interests of anyone other than Plaintiff.

45.    As employees of Plaintiff, the Defendant-Employees were required to follow the subject policies.

46.    In approximately September of 2017, Plaintiff discovered that numerous fraudulent transactions had occurred and found concealed information and data that had been altered in and/or deleted from Plaintiff's computer systems.

47.    Thereafter, Plaintiff discovered multiple schemes which, upon information and belief, were orchestrated and/or participated in by the Defendant-Employees as well as Defendant Custom Stripe, Defendant Aftermath, and the Defendant-Wholesalers.

48.     Upon information and belief, one such scheme involved one or more of the Defendant-Employees agreeing to bind Plaintiff to pay inflated prices for used vehicles which the Defendant-Wholesalers had purchased at auction, rather than the Defendant-Employees purchasing those same cars at auction at a lower cost.

49.     Upon information and belief, the Defendant-Employees and Defendant-Wholesalers caused the Plaintiff to pay inflated prices totaling not less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

50.     Upon information and belief, to conceal the inflated prices paid to the Defendant-Wholesalers, Defendant-Employees used Dealership computers to alter and/or delete data pertaining to the used vehicle prices and inventory that was and is stored in Plaintiff's computer systems.

51.     Upon information and belief, another such scheme involved multiple overpayments being made by one or more of the Defendant-Employees from Plaintiff's accounts to Defendant Custom Stripe, Defendant Jeff Murphy, and Defendant Aftermath.

52.     Upon information and belief, Defendant Custom Stripe and Defendant Jeff Murphy charged Plaintiff inflated prices for services performed on vehicles totaling not less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars between approximately 2015 through 2017.

53.     Upon information and belief, Defendant Aftermath, by and through its owners, principals, managers, employees and agents, including, but not limited to, Defendant Lentini, was paid by one or more of the Defendant-Employees not less than Fifty-One Thousand Eight Hundred Seventy-Five and No/100 ($51,875.00) Dollars for the performance of services upon Plaintiff's

vehicles when no such services were ever performed by Defendant Aftermath upon Plaintiff's vehicles.

54.     Upon information and belief, one or more of the Defendant-Employees fraudulently altered and/or deleted data in the Plaintiff's computer systems pertaining to several of the Plaintiff's business functions, including, but not limited to, servicing work performed on particular new and used vehicles, the installation of accessories and trim levels on particular vehicles, the prices paid by Plaintiff by and through one or more of the Defendant-Employees to acquire particular used vehicles, the sales status of particular used vehicles, and additional business functions.

55.     Upon information and belief, on at least one occasion, one or more of the Defendant-Employees removed vehicles from the Plaintiff's lot and sold those vehicles in their own private sale(s).

56.     Upon information and belief, one or more of the Defendant-Employees fraudulently misrepresented the sale(s) of said vehicle(s), caused the Plaintiff to never receive any money for the sale of said vehicle(s), and/or fraudulently sold said vehicle(s) to the Plaintiff a second time for the purpose of causing the Plaintiff to pay more than once for the same vehicle(s).

57.     Upon information and belief, to hide the fraudulent sale of these vehicle, one or more of the Defendant-Employees altered and/or deleted the data in Plaintiff's computers and/or computer systems.

58.     Upon information and belief, as a result of the multiple fraudulent overpayments, concealed transactions, and other fraudulent schemes, the Defendant-Employees fraudulently deprived Plaintiff of an amount no less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

## AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST
## THE DEFENDANT-EMPLOYEES
### (18 U.S.C. §1030 Fraud in Connection with Computers)

59.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "58" as if set forth herein in their entirety.

60.     Plaintiff uses computers to facilitate electronic communications in conducting interstate commerce.

61.     Plaintiff's computers are protected computers within the meaning of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030(e)(2)(B).

62.     Upon information and belief, one or more of the Defendant-Employees knowingly circumvented a combination of technical and administrative security access barriers established by Plaintiff on Plaintiff's protected computers and intentionally accessed Plaintiff's data, financial information, accounting information, inventory information and/or other confidential information by and through means of accessing Plaintiff's internal accounting system, internal and external inventory systems, financial systems and/or other computer systems without authorization, and/or exceeded their authorized access and altered and/or deleted said information to conceal said Defendants' fraudulent activities and deprive Plaintiff of due income and revenue.

63.     By engaging in the trespassory conduct described herein to defeat Plaintiff's access restrictions, one or more of the Defendant-Employees knowingly and with the intent to defraud, accessed protected computer systems and data owned by Plaintiff without authorization and/or in excess of their authorization, in violation of 18 U.S.C. §1030(a)(4), thus proximately damaging and irreparably compromising the integrity and availability of certain of the Plaintiff's key critical business systems and databases.

64.     The Defendant-Employees, as employees and special agents of Plaintiff, were not authorized to access Plaintiff's computer systems in any manner prohibited by or contrary to Plaintiff's narrowly-tailored company policies, including, but not limited to, its Electronic Communication policy, Conflict of Interest/Code of Ethics policy, and/or in violation of law.

65.     Upon information and belief, the Defendant-Employees' actions were taken with the knowledge of Defendant Custom Stripe, Defendant Aftermath and the Defendant-Wholesalers, by and through said Defendants' respective owners, principals, members, officers, managers, employees and/or agents.

66.     The Defendant-Employees' conduct, taken for their own benefit, and, upon information and belief, for the benefit of Defendant Custom Stripe, Defendant Aftermath and the Defendant-Wholesalers, caused losses to Plaintiff in excess of Five Thousand and no/100 ($5,000.00) Dollars of value and in amount to be proven at trial, which in no event is expected to be less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, including, but not limited to, losses sustained from responding to the Defendant-Employees' actions; retaining experts to investigate the Defendant-Employees' actions and the trespassory damage caused to the Plaintiff's data, computers and computer networks; and economic losses resulting from the Defendant-Employees' actions in altering and/or deleting Plaintiff's inventory records, accounting data and/or other confidential and proprietary information.

67.     The Defendant-Employees' conduct has caused and stands to cause Plaintiff substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary and trade secret information.

68.     As a direct and proximate result of the actions of the Defendant-Employees taken for their own benefit and for the benefit of Defendant Custom Stripe and its owners, principals, members, officers, managers, employees and/or agents, Plaintiff has, upon information and belief, suffered losses in an amount in excess of Five Thousand and no/100 ($5,000.00) Dollars of value, in an amount to be proven at trial, which in no event is expected to be less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

69.     As a direct and proximate result of the actions of the Defendant-Employees' taken for their own benefit and for the benefit of Defendant Aftermath and its owners, principals, members, officers, managers, employees and/or agents, Plaintiff has, upon information and belief, suffered losses in an amount in excess of Five Thousand and no/100 ($5,000.00) Dollars of value, in an amount to be proven at trial, which in no event is expected to be less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

70.     As a direct and proximate result of the actions of the Defendant-Employees' taken for their own benefits and for the benefit of the Defendant-Wholesalers and said Defendants' respective owners, principals, members, officers, managers, employees and/or agents, Plaintiff has suffered losses in an amount in excess of Five Thousand and no/100 ($5,000.00) Dollars of value, in an amount to be proven at trial, which in no event is expected to be less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

71.     Based upon the foregoing, Plaintiff is entitled to judgment against one or more of the Defendant-Employees in an amount to be proven at trial, which in no event is expected to be less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, and Plaintiff is further entitled to punitive damages, Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

## AS AND FOR A SECOND CAUSE OF ACTION AS
## AGAINST THE DEFENDANT-EMPLOYEES
### (18 U.S.C. §1836 Economic Espionage Act)

72.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "71" as if set forth herein in their entirety.

73.     The Defendant-Employees' actions, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836.

74.     At all times herein relevant, upon information and belief, the Defendant-Employees improperly possessed, and continue to possess, confidential and secret information belonging to Plaintiff including financial, business, employee, customer and strategic information that constitute Plaintiff's trade secrets.

75.     Plaintiff's financial information, wholesale vehicle cost, inventory numbers, strategic information, and other information are not publicly available.

76.     Such information is used in connection with Plaintiff's automobile dealership services which are offered within the State of Connecticut and interstate.

77.     Plaintiff's trade secrets are not accessible to the public and Plaintiff has taken substantial measures to ensure that its trade secrets remain confidential.

78.     Plaintiff maintains the said information and trade secrets on secure access-restricted computer systems accessible only by certain authorized employees and/or special agents who must enter a company-assigned and specially-provisioned unique username and password combination in order to access said systems.

79.     Plaintiff's trade secrets are not readily ascertainable by any individual not employed by the Plaintiff or by any employee or special agent who is not specifically authorized to access those trade secrets.

80.     Plaintiff has taken additional measures to protect its proprietary information and trade secrets, including, but not limited to, instituting the aforementioned narrowly-tailored company policies and confidentiality provisions which restrict the use of and access to Plaintiff's trade secrets and computer systems.

81.     The Defendant-Employees were both aware of and subject to the said company policies designed to protect its proprietary information and trade secrets, which required, inter alia, that employees maintain the confidentiality of the information, data and trade secrets stored in its computer systems, and prohibited the Defendant-Employees from discussing or disseminating the said information, data and trade secrets with anyone who was not given authorization, and from using the said information, data and trade secrets for the benefit of anyone other than Plaintiff.

82.     The subject information, data and trade secrets derive both actual and potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the subject information, data and trade secrets.

83.     The Defendant-Employees have used improper means to acquire the trade secrets and/or knew or had reason to know that the trade secrets were acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or derived from or through a person who owed such a duty.

84.     The Defendant-Employees knew or should have known that the subject information and data contained and/or constituted trade secrets belonging to Plaintiff that would give rise to significant financial and business opportunities they would otherwise not be privy to.

85.     The Defendant-Employees' conduct constitutes knowing, willful, and malicious appropriation of the subject information, data and trade secrets.

86.    The Defendant-Employees' actions, as alleged, occurred after May 11, 2016 and fall within the reach of the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836.

87.    The Defendant-Employees' misappropriation of the Plaintiff's trade secrets has caused Plaintiff harm because doing so allowed the Defendant-Employees to cause Plaintiff to pay for services performed by Defendant Custom Stripe at inflated and exorbitant prices; cause Plaintiff to pay Defendant Aftermath for services that were not actually performed; cause Plaintiff to purchase vehicles at inflated and exorbitant prices from the Defendant-Wholesalers; and perform other fraudulent acts which allowed the Defendant-Employees to derive personal income at the expense of Plaintiff.

88.    By reason of the foregoing, pursuant to 18 U.S.C. §1836(b)(3)(B), Plaintiff is entitled to judgment against one or more of the Defendant-Employees for Plaintiff's actual loss and the unjust enrichment of the Defendants herein in an amount to be proven at trial, which in no event is expected to be less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

89.    The Defendant-Employees' misappropriation of Plaintiff's trade secrets was intentional, deliberate, malicious and made in wanton and willful disregard of Plaintiff's rights and interests; therefore, pursuant to 18 U.S.C. §1836(b)(3)(C), Plaintiff is entitled to recover exemplary damages of double the amount of the Plaintiff's compensatory damages, and Plaintiff is further entitled to recover attorney's fees pursuant to 18 U.S.C. §1836(b)(3)(D).

### AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST
### THE DEFENDANT-EMPLOYEES
**(18 U.S.C. §2707 Stored Communications Act)**

90.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "89" as if set forth herein in their entirety.

91.     Plaintiff's email accounts and voicemail accounts are electronic communication services within the meaning of the Stored Communications Act ("SCA"), 18 U.S.C. §2701.

92.     The Plaintiff uses its email accounts and voicemail accounts in interstate commerce.

93.     Upon information and belief, one or more of the Defendant-Employees intentionally and knowingly circumvented a combination of technical and administrative security controls and access barriers established by Plaintiff to access Plaintiff's email accounts, voicemail accounts and stored electronic communications, facilities and services without authorization and for the purposes of obtaining a commercial advantage, private commercial gain, and in furtherance of tortious acts, including, but not limited to, tortious interference with Plaintiff's contracts and tortious interference with Plaintiff's business relations.

94.     Upon information and belief, one or more of the Defendant-Employees intentionally used, disclosed and/or disseminated said stored electronic communications to third parties, including, but not limited to, each other, as well as to Defendant Custom Stripe, Defendant Aftermath and the Defendant-Wholesalers.

95.     Plaintiff has been harmed as a result of the Defendant-Employees' unauthorized access of other dealership email accounts and electronic communications, because doing so allowed the Defendant-Employees to cause Plaintiff to pay for services performed by Defendant Custom Stripe at inflated and exorbitant prices; cause Plaintiff to pay Defendant Aftermath for services that were not actually performed; cause Plaintiff to purchase vehicles at inflated and exorbitant prices from the Defendant-Wholesalers; and perform other fraudulent acts which allowed the Defendant-Employees to derive personal income at the expense of Plaintiff.

96.     By reason of the foregoing, pursuant to 18 U.S.C. §2707(c), Plaintiff is entitled to judgment against one or more of the Defendant-Employees for Plaintiff's damages in an amount to be determined at trial, which in no event is expected to be less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

97.     The Defendant-Employees' acts as aforesaid were willful and intentional; therefore, pursuant to 18 U.S.C. §2707(c), Plaintiff is entitled to recover punitive damages, statutory damages, and Plaintiff's costs and attorney's fees.

**AS AND FOR A FOURTH CAUSE OF ACTION AS
AGAINST THE DEFENDANT-EMPLOYEES, THE
DEFENDANT-WHOLESALERS, DEFENDANT
AFTERMATH, AND DEFENDANT CUSTOM STRIPE**
**(18. U.S.C. §§1962 and 1964 RICO)**

98.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if set forth herein in their entirety.

99.     The course of conduct by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe, by and through said Defendants' respective owners, principals, members, officers, managers, employees and/or agents, including Defendant Duric, Defendant Sejdiu, Defendant Lentini and Defendant Murphy (collectively, the "Defendants"), as set forth herein constitutes violations of 18 USC §1962.

100.     The Defendants engaged in a pattern of wrongful conduct involving mail fraud and wire fraud to acquire an interest in and to maintain custodianship over Plaintiff's assets.

101.     The conduct of the Defendants described herein constitutes mail fraud in violation of 18 U.S.C. §1341 in that the Defendants participated in a scheme or artifice to defraud or attempt to defraud Plaintiff; the Defendants or someone associated with the scheme used the mails or caused the mails to be used by placing or causing to be placed in an authorized depository for mail

a letter intended to be sent or delivered by the United States Postal Service; and the use of the mails was for the purpose of executing the scheme.

102.    Upon information and belief, the United States mails were used fraudulently in violation of 18 U.S.C. §1341 by one or more of the Defendant-Employees to deliver Plaintiff's payments for services to Defendant Custom Stripe which the Defendant-Employees knew were inflated and exorbitant; to deliver Plaintiff's payments to Defendant Aftermath for services that the Defendant-Employees knew were not actually performed by Defendant Aftermath; to deliver contracts to one or more of the Defendant-Wholesalers for the purchase of used vehicles at inflated and exorbitant prices; to deliver Plaintiff's funds representing excessive payments to one or more of the Defendant-Wholesalers; and by all of the Defendants to deliver improper and fraudulent service reports, accountings, invoices and/or other documents used to perpetuate the Defendants' fraudulent acts and schemes.

103.    Upon information and belief, one or more of the Defendant-Employees mailed Plaintiff's checks to Defendant Custom Stripe, no less than twelve times, as payment for services which the Defendant-Employees knew were charged to Plaintiff at inflated and exorbitant prices on multiple dates including, but not limited to, June 24, 2016; September 20, 2016; October 14, 2016; November 18, 2016; December 26, 2016; January 24, 2017; March 22, 2017; April 21, 2017; and October 13, 2017.

104.    Upon information and belief, one or more of the Defendant-Employees mailed Plaintiff's checks to Defendant Aftermath, no less than 4 times, as payment for services that the Defendant-Employees knew had not been performed, on multiple dates including, but not limited to, September 20, 2016; November 8, 2016; February 27, 2017; and September 26, 2017.

105.    Upon information and belief, one or more of the Defendant-Employees mailed Plaintiff's checks to one or more of the Defendant-Wholesalers, no less than one hundred thirty times, as payment for used vehicles which the Defendant-Employees knew were sold to Plaintiff at inflated and exorbitant prices, on multiple dates including, but not limited to, January 10, 2017; March 9, 2017; May 16, 2017; July 27, 2017; August 10, 2017; September 8, 2017; and September 14, 2017.

106.    The conduct of the Defendants described herein further constitutes wire fraud in violation of 18 U.S.C. §1343 in that the Defendants devised a scheme or artifice to defraud or attempt to defraud Plaintiff; the Defendants transmitted communications by means of a telephone or fax machine connected to interstate wires for the purpose of executing such scheme or artifice; and the Defendants used a telephone or a fax machine connected to interstate wires willfully and with the specific intent to carry out or attempt to carry out one or more essential steps of the scheme or artifice to defraud or attempt to defraud Plaintiff.

107.    Upon information and belief, the interstate telephone wires were used in violation of 18 U.S.C. §1343 by one or more of the Defendant-Employees to bind Plaintiff to pay Defendant Custom Stripe for services at prices which the Defendant-Employees knew were inflated and exorbitant; to bind Plaintiff to pay invoices from Defendant Aftermath for services that the Defendant-Employees knew were never performed; to set up transactions with the Defendant-Wholesalers by which Plaintiff was obligated to pay prices for used vehicles which the Defendant-Employees knew were inflated and exorbitant; to set up and transmit fraudulent service tickets with the Plaintiff's service department; and by all of the Defendants to deliver improper and fraudulent service reports, accountings, invoices and/or other documents used to perpetuate the Defendants' fraudulent acts and schemes.

108.    As described herein, the Defendants engaged in numerous acts of racketeering activity within ten years of each other.

109.    The predicate acts and other wrongful conduct of the Defendants described herein were related in that they involved the same or similar purposes, results, participants, victims, and methods of commission, and did not involve isolated or sporadic events.

110.    Further there was continuity of conduct in that the Defendants engaged in the predicate acts and other wrongful activities described herein regularly and continuously over a considerable period of time and involved conduct with the threat of continuing wrongful activities.

111.    Pursuant to 18 U.S.C. §1962(b), the Defendants have engaged in the pattern of racketeering activity described herein to acquire an interest in and gain custodianship of the Plaintiff's assets which constitutes an "enterprise" affecting interstate commerce within the meaning of 18 U.S.C. §1961(4).

112.    Further, pursuant to 18 U.S.C. §1962(c), the Defendants and other persons not named as Defendants herein have participated in an associational enterprise-in-fact affecting interstate commerce.

113.    The associational enterprise was devoted to the wrongful and fraudulent transfer and concealment of Plaintiff's assets and was formed for the purpose of carrying out the activities alleged herein.

114.    The associational enterprise has an on-going organization and functions as a continuing unit.

115.    The purpose of the enterprise is to accomplish the fraudulent transfer and concealment of Plaintiff's assets.

116.    The Defendants and other persons not named as Defendants herein have conducted the affairs of this enterprise through the pattern of racketeering activity described herein.

117.    Further, the Defendants herein participated in varying capacities in the fraudulent schemes.

118.    The Defendants willfully associated themselves with the scheme to defraud Plaintiff and willfully participated in such scheme.

119.    As set forth above, the Defendants committed numerous fraudulent and wrongful acts which constitute mail fraud and wire fraud.

120.    The Defendants named herein knew about and agreed to facilitate the wrongful and fraudulent schemes and provided knowing and substantial assistance toward the accomplishment of the fraudulent schemes.

121.    The Defendants aided and abetted the mail fraud and wire fraud and pursuant to 18 U.S.C. §1962(d) and 18 U.S.C. §2, the Defendant Duric, Defendant Sejdiu, Defendant Lentini and Defendant Murphy are liable as principals and co-conspirators.

122.    As a result of the conduct of the Defendants as alleged herein and by reason of the foregoing, Plaintiff has suffered an ascertainable loss of money in an amount to be proven at trial, which in no event is expected to be less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, and pursuant to 18 U.S.C. §1964(c) is further entitled to treble damages and attorney's fees.

**AS AND FOR A FIFTH CAUSE OF ACTION AS AGAINST<br>THE DEFENDANT-EMPLOYEES**<br>(Statutory Theft Conn. Gen. Stat. 52-564)

123.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "122" as if set forth herein in their entirety.

124.    Upon information and belief, the Defendant-Employees, while employed by Plaintiff, wrongfully and without authorization took inventory from Plaintiff and sold said inventory to customers in private sales and not as a transaction reported as part of Dealership transactions.

125.    Due to said unauthorized taking and reselling of inventory owned by Plaintiff, the Defendant-Employees engaged in civil theft within the meaning of Conn. Gen. Stat. §52-564.

126.    As a result of the Defendant-Employees' conduct as alleged herein, Plaintiff has sustained damages in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

127.    Based upon the foregoing, pursuant to Conn. Gen. Stat. §52-564, Plaintiff is entitled to recover damages in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with treble damages.

### AS AND FOR A SIXTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES
### (Conversion)

128.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "127" as if set forth herein in their entirety.

129.    For many years prior to the dates at issue herein, Plaintiff entrusted the Defendant-Employees with the control of Plaintiff's computer inventory, its dealership accounting and financial information, the buying and selling of its used vehicle inventory, and the solicitation of third-party companies to perform services for the benefit of Plaintiff, as part of the Defendant-Employees' employment with Plaintiff.

130.    The Defendant-Employees wrongfully conspired to illegally take, and did illegally take, property which was rightfully owned by Plaintiff and converted such property for said Defendants' own personal use, benefit, and interests wholly separate and apart from the interests of the Plaintiff.

131.    The Defendant-Employees intentionally and substantially interfered with Plaintiff's funds by unlawfully converting Plaintiff's assets and funds to said Defendants' own use and benefit.

132.    Plaintiff did not consent in any manner to the Defendant-Employees taking the said funds or assets at issue for their own personal use.

133.    To date, the Defendant-Employees have not returned the converted funds to Plaintiff, as the rightful owner thereof, and upon information and belief, despite due demand therefor, the Defendant-Employees currently possess and exercise dominion and control over said funds to the exclusion of Plaintiff.

134.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be proven at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, and Plaintiff is further entitled to punitive damages, Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

### AS AND FOR A SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES, THE DEFENDANT-WHOLESALERS, DEFENDANT AFTERMATH AND DEFENDANT CUSTOM STRIPE
**(Fraud)**

135.    Plaintiff, repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "134" as if set forth herein in their entirety.

136.    Plaintiff entrusted the Defendant-Employees with full control over Plaintiff's automobile dealership.

137.    Upon    information    and    belief,    the    Defendant-Employees    intentionally misrepresented to Plaintiff the size, value, quality and quantity of its used vehicle inventory, the details of its purchase and sales transactions, the services performed or allegedly performed by Defendant Custom Stripe and Defendant Aftermath, the value and quality of used vehicles purchased by the Defendant-Employees on behalf of Plaintiff from the Defendant-Wholesalers, and further entered and/or caused to be entered inaccurate, misleading and false entries into Plaintiff's computers and/or computer systems in an effort to disguise and deceive the Plaintiff as to the true nature, value, quality and quantity of Plaintiff's assets.

138.    Upon    information    and    belief,    the    Defendant-Wholesalers    intentionally misrepresented to Plaintiff the value, quality and cost of used vehicles which it sold to Plaintiff.

139.    Upon information and belief, Defendant Aftermath intentionally misrepresented to Plaintiff the services allegedly performed on vehicles in Plaintiff's inventory and the cost of such work, for which Plaintiff paid said Defendant.

140.    Upon    information    and    belief,    Defendant    Custom    Stripe    intentionally misrepresented to Plaintiff the services performed and the cost and value of such services performed on vehicles in Plaintiff's inventory, for which Plaintiff paid said Defendant.

141.    The Defendant-Employees' misrepresentations and fraud were material and deprived Plaintiff of revenue, income and cash which was rightfully owned by Plaintiff, and said Defendants retained the same for said Defendants' own personal use.

142.    The Defendant-Wholesalers' misrepresentations and fraud were material and deprived Plaintiff of revenue, income and cash which was rightfully owned by Plaintiff, and said Defendants retained the same for said Defendants' own personal use.

143.    Defendant Aftermath's misrepresentations and fraud were material and deprived Plaintiff of revenue, income and cash which was rightfully owned by Plaintiff, and said Defendant retained the same for said Defendant's own personal use.

144.    Defendant Custom Stripe's misrepresentations and fraud were material and deprived Plaintiff of revenue, income and cash which was rightfully owned by Plaintiff, and said Defendant retained the same for said Defendant's own personal use.

145.    Plaintiff justifiably and reasonably relied upon the Defendant-Employees' representations regarding the nature, value, quality and quantity of Plaintiff's assets, revenue, income and cash, as detailed herein.

146.    Plaintiff justifiably and reasonably relied upon the Defendant-Wholesalers' representations regarding the nature, value, quality, quantity and cost of used vehicles sold to and purchased by Plaintiff.

147.    Plaintiff justifiably and reasonably relied upon Defendant Aftermath's representations regarding the nature, value, quality, quantity and cost of the services allegedly performed by said Defendant on vehicles in Plaintiff's inventory, for which Plaintiff paid said Defendant.

148.    Plaintiff justifiably and reasonably relied upon Defendant Custom Stripe's representations regarding the nature, value, quality, quantity and cost of the services performed by said Defendant on vehicles in Plaintiff's inventory, for which Plaintiff paid said Defendant.

149.    Plaintiff's reasonable reliance upon inaccurate, fraudulent, misleading and false misrepresentations made by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe, as aforesaid, directly and proximately caused Plaintiff to suffer substantial losses of revenue, income and cash rightfully due to Plaintiff.

150.    To date, the said revenue, income or cash have not been returned to Plaintiff by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath nor Defendant Custom Stripe, and said Defendants continue to possess and exercise dominion and control of the same to the exclusion of Plaintiff.

151.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be proven at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action and interest thereupon.

152.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Wholesalers in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

153.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Aftermath in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

154.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Custom Stripe in an amount to be determined at trial, which in no event is less than Four Hundred

Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

155.    The conduct of the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury to Plaintiff, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and was performed with fraud, oppression and/or malice so as to justify an award to Plaintiff of exemplary and/or punitive damages against the said Defendants in an amount to be determined at trial.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AS
AGAINST THE DEFENDANT-EMPLOYEES, THE
DEFENDANT-WHOLESALERS, DEFENDANT
AFTERMATH AND DEFENDANT CUSTOM STRIPE
(Negligent Misrepresentation)**

156.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "155" as if set forth herein in their entirety.

157.    Upon information and belief, the Defendant-Employees misrepresented to Plaintiff the true value of the vehicles in Plaintiff's inventory by entering or causing to be entered inaccurate, misleading and false entries in Plaintiff's books, records, computers and computer systems, in an effort to disguise and deceive Plaintiff as to the true nature thereof and otherwise misrepresented the true value of the Dealership's inventory, assets, revenue, income and cash.

158.    Upon information and belief, the Defendant-Wholesalers misrepresented to Plaintiff the value, quality and cost of used vehicles which it sold to Plaintiff.

159.    Upon information and belief, Defendant Aftermath misrepresented to Plaintiff the services allegedly performed on vehicles in Plaintiff's inventory and the cost of such work, for which Plaintiff paid said Defendant.

160.    Upon information and belief, Defendant Custom Stripe misrepresented to Plaintiff the services performed and the cost and value of such services performed on vehicles in Plaintiff's inventory, for which Plaintiff paid said Defendant.

161.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe negligently induced Plaintiff to rely upon the misrepresentations made by said Defendants, as aforesaid.

162.    Plaintiff was justified in relying upon Defendant-Employees' misrepresentations concerning the value of Plaintiff's inventory, assets, revenue, income and cash, as said Defendants held themselves out as acting in the interests of Plaintiff as its employees.

163.    Plaintiff    was    justified    in    relying    upon    the    Defendant-Wholesalers' misrepresentations concerning the value, quality and cost of used vehicles which it sold to Plaintiff, as said Defendants held themselves out as acting in good faith and as reputable Wholesalers in the automobile industry.

164.    Plaintiff was justified in relying upon Defendant Aftermath's misrepresentations concerning the services allegedly performed on vehicles in Plaintiff's inventory and the cost of such work, as said Defendant held itself out as acting in good faith and as a reputable business in the automobile industry.

165.    Plaintiff    was    justified    in    relying    upon    Defendant    Custom    Stripe's misrepresentations concerning the services performed and the cost and value of such services as

performed on Dealership vehicles, as said Defendant held itself out as acting in good faith and as a reputable business in the automobile industry.

166.    Plaintiff has been substantially harmed and damaged by the misrepresentations made by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe, because Plaintiff has been deprived of inventory, assets, revenue, income and cash rightfully owed and due to Plaintiff.

167.    As a direct and proximate result of the Defendant-Employees' negligent misrepresentations as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

168.    As a direct and proximate result of the Defendant-Wholesalers' negligent misrepresentations as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

169.    As a direct and proximate result of Defendant Aftermath's negligent misrepresentations as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

170.    As a direct and proximate result of Defendant Custom Stripe's negligent misrepresentations as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

171.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

172.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Wholesalers in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

173.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Aftermath in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

174.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Custom Stripe in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

### AS AND FOR A NINTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES, DEFENDANT CUSTOM STRIPE, DEFENDANT AFTERMATH, AND THE DEFENDANT-WHOLESALERS
#### (Tortious Interference with Business Relations)

175.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "174" as if set forth herein in their entirety.

30

176.    The Defendant-Employees knew or should have known of Plaintiff's business relationships and expectations.

177.    The Defendant-Wholesalers knew or should have known of Plaintiff's business relationships and expectations.

178.    Defendant Aftermath knew or should have known of Plaintiff's business relationships and expectations.

179.    Defendant Custom Stripe knew or should have known of Plaintiff's business relationships and expectations.

180.    The Defendant-Employees tortiously interfered with Plaintiff's business relationships and expectations with its customers, potential customers, professional automotive accessory companies, wholesalers, automobile auction services, and others by altering, deleting and misrepresenting the data pertaining to Plaintiff's used vehicle inventory; agreeing on behalf of Plaintiff and binding Plaintiff to pay inflated and exorbitant prices for vehicles and services; causing Plaintiff to pay inflated and exorbitant prices for vehicles and services; denying Plaintiff the opportunity to contract with customers, potential customers, professional automotive accessory companies, wholesalers, automobile auction services, and others; and otherwise tortiously interfered with Plaintiff's business relationships and expectations, as aforesaid.

181.    The Defendant-Wholesalers tortiously interfered with Plaintiff's business relationships and expectations with its customers, potential customers, other wholesalers, automobile auction services, and others by causing Plaintiff to purchase used vehicles at inflated and exorbitant prices, and otherwise tortiously interfered with Plaintiff's business relationships and expectations, as aforesaid.

182.    Defendant Aftermath tortiously interfered with Plaintiff's business relationships and expectations with its customers, potential customers, other professional automotive accessory companies and others by failing to perform the services for which Plaintiff paid said Defendant, and otherwise tortiously interfered with Plaintiff's business relationships and expectations, as aforesaid.

183.    Defendant Custom Stripe tortiously interfered with Plaintiff's business relationships and expectations with its customers, potential customers, other professional automotive accessory companies and others by charging inflated and exorbitant prices to Plaintiff for services which it performed on vehicles in Plaintiff's inventory, and otherwise tortiously interfered with Plaintiff's business relationships and expectations, as aforesaid.

184.    The aforesaid acts by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe were done maliciously, intentionally and without just care or excuse for the improper purpose of depriving Plaintiff of its reasonable business expectations, revenues, profit and cash, as well as other improper purposes.

185.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe substantially profited from their malicious and improper actions at the expense of Plaintiff.

186.    As a direct and proximate result of the Defendant-Employees' tortious interference, Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

187.    As a direct and proximate result of the Defendant-Wholesalers' tortious interference, Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

188.    As a direct and proximate result of Defendant Aftermath's tortious interference, Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

189.    As a direct and proximate result of Defendant Custom Stripe's tortious interference, Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

190.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

191.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Wholesalers in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

192.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Aftermath in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

193.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Custom Stripe in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

### AS AND FOR A TENTH CAUSE OF ACTION AS AGAINST
### THE DEFENDANT-EMPLOYEES
### (Breach of Fiduciary Duty)

194.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "193" as if set forth herein in their entirety.

195.    Upon information and belief, the Defendant-Employees were employees of the Plaintiff at all times herein relevant.

196.    The Defendant-Employees oversaw and participated in the management of Plaintiff's automobile dealership, Plaintiff's used car inventory, the purchase of Plaintiff's vehicles from wholesalers, the sale of vehicles to customers, the buying of used vehicles from customers, the payment for services performed or allegedly performed by third parties, the authorization of service performed on Plaintiff's vehicles, and were in charge of entering and/or causing to be entered all inventory counts, sales and purchases transactions, and financial transactions into Plaintiff's books, records, computers and/or computer systems.

197.    As employees of Plaintiff, the Defendant-Employees owed to Plaintiff a fiduciary duty, a duty of fidelity and their undivided and unqualified loyalty.

198.    Despite the Defendant-Employees' aforementioned duties, said Defendants nevertheless acted in a manner for their own benefit, contrary to the interests of Plaintiff, and to the financial detriment of the Plaintiff.

199.    The Defendant-Employees breached their fiduciary duties to Plaintiff, including, but not limited to, their duty of fidelity and duty of loyalty, by engaging in self-dealing, concealment of financial transactions undertaken for said Defendants' own personal benefit, and to further their own personal interests separate and apart from those of Plaintiff.

200.    The Defendant-Employees' actions and omissions were performed in bad faith and were not in the best interest of Plaintiff.

201.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES, DEFENDANT CUSTOM STRIPE, DEFENDANT AFTERMATH, AND THE DEFENDANT-WHOLESALERS
**(Unjust Enrichment)**

202.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "201" as if set forth herein in their entirety.

203.    Upon information and belief, the Defendant-Employees, Defendant Aftermath, and Defendant Custom Stripe financially benefitted from the overpayment by Plaintiff for labor performed on vehicles in Plaintiff's inventory, as well as from payments made by Plaintiff for services that were not actually performed on vehicles in Plaintiff's inventory.

204.    Further, the Defendant-Employees and the Defendant-Wholesalers financially benefited by causing Plaintiff to overpay for used vehicles which the Defendant-Employees had the opportunity to purchase on behalf of Plaintiff at lower prices.

205.    Said Defendants were therefore unjustly enriched at the expense of Plaintiff.

206.    As a direct and proximate result of the actions of the Defendant-Employees and Defendant Custom Stripe, as aforesaid, said Defendants have been unjustly enriched and Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

207.    As a direct and proximate result of the actions of the Defendant-Employees and Defendant Aftermath, as aforesaid, said Defendants have been unjustly enriched and Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

208.    As a direct and proximate result of the actions of the Defendant-Employees and Defendant-Wholesalers, as aforesaid, said Defendants have been unjustly enriched and Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

209.    As a direct and proximate result of the actions of the Defendant-Employees' actions in all schemes, as aforesaid, said Defendants have been unjustly enriched and Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

210.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendants in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

**AS AND FOR A TWELFTH CAUSE OF ACTION AS**
**AGAINST THE DEFENDANT-EMPLOYEES**
**(Conn. Gen. Stat.  Computer Related Offenses –**
**§§ 52-570b and 53a-251)**

211.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "210" as if set forth herein in their entirety.

212.    Plaintiff's confidential and protected computer system, computer data, computer programs and computer software reside and must be accessed through computers located in Hartford, Connecticut.

213.    Upon information and belief, the Defendant-Employees exceeded their authorized access of Plaintiff's computers when they accessed and altered confidential inventory information, financial information and other information in connection with vehicles owned by Plaintiff.

214.    Upon information and belief, when the Defendant-Employees accessed and altered said information without authorization, they did so on behalf of, and to further the interests of, themselves and/or third-party vendors.

215.    The Defendant-Employees knew or should have known that they were not authorized to access or alter any such information in Plaintiff's confidential and protected computer system for any reason other than conducting business transactions for the benefit of Plaintiff.

216.    Upon information and belief, by accessing and altering Plaintiff's confidential and protected computer system and the information contained therein, the Defendant-Employees intentionally and/or recklessly, and without authorization, altered, tampered with, damaged, intercepted, and/or took information intended for use by Plaintiff's protected computer system and for the sole benefit of Plaintiff.

217.    The Defendant-Employees knowingly received and altered information obtained as a result of their unauthorized access, as aforesaid.

218.    As a result of the foregoing, the Defendant-Employees violated Connecticut General Statutes §53a-251(b) and (e).

219.    Plaintiff is aggrieved by the Defendant-Employees' violation of §53a-251.

220.    Plaintiff has suffered injury to its business and property as a result of the Defendant-Employees' actions, as aforesaid.

221.    The Defendant-Employees' actions were willful and malicious.

222.    As a direct and proximate result of Defendant-Employees' actions in all schemes, Plaintiff has been damaged in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

223.    Pursuant to Connecticut General Statutes §52-570b, Plaintiff is entitled to an order awarding its actual damages in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with damages for unjust enrichment, treble damages, restitution, an injunction temporarily or permanently restraining and enjoining the continuance of such violation, costs, and attorney's fees.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES
#### (Conn. Gen. Stat. §§ 53-451 and 53-452)

224.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "223" as if set forth herein in their entirety.

225.    Plaintiff's protected computer system and network operates throughout the United States, with its computer servers and all information stored in, and transmitted to and from, Hartford, Connecticut.

226.    During the course of their employment with Plaintiff, the Defendant-Employees used Plaintiff's protected computer system and network without authority and with the intent to: (1) temporarily or permanently remove computer data from Plaintiff's computers and/or protected computer system and network; and/or (2) temporarily or permanently alter the computer data residing in, communicated by, or produced by Plaintiff's computers or protected computer system and network located in Hartford, Connecticut.

227.    The Defendant-Employees' conduct as aforesaid violates Connecticut General Statutes §53-451.

228.    Plaintiff's property and business were and are injured by reason of the aforesaid actions of the Defendant-Employees.

229.    As a direct and proximate result of Defendant-Employees' actions in all schemes, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

230.    Pursuant to Connecticut General Statutes §53-452, Plaintiff is entitled to a court order enjoining further violations and awarding damages sustained by reason of Defendant-Employees' actions, plus costs, as well as an order awarding any other remedies Plaintiff may have available to it under applicable law.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION AS
AGAINST THE DEFENDANT-EMPLOYEES, THE
DEFENDANT-WHOLESALERS, DEFENDANT
AFTERMATH AND DEFENDANT CUSTOM STRIPE**
**(Larceny by Trick)**

231.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "230" as if set forth herein in their entirety.

232.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe have obtained the property of Plaintiff by deception, artifice, fraud and/or force.

233.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe each intended to obtain the property of the Plaintiff and convert it for their own respective use.

234.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe each intended to permanently deprive Plaintiff of its property.

235.    The Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe have each permanently deprived Plaintiff of its property.

236.    As a direct and proximate result of the Defendant-Employees' actions as aforesaid, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

237.    As a direct and proximate result of the Defendant-Wholesalers' actions as aforesaid, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

238.    As a direct and proximate result of Defendant Aftermath's actions as aforesaid, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

239.    As a direct and proximate result of Defendant Custom Stripe's actions as aforesaid, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

240.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

241.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Wholesalers in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

242.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Aftermath in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

243.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Custom Stripe in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars, together with

Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION AS AGAINST THE DEFENDANT-EMPLOYEES, DEFENDANT WHOLESALERS, DEFENDANT AFTERMATH AND DEFENDANT CUSTOM STRIPE
### (Civil Conspiracy)

244.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "243" as if set forth herein in their entirety.

245.    Upon information and belief, Defendant Aftermath acted in close concert and cooperation with the Defendant-Employees to illicitly receive unjust enrichment due to the Defendant-Employees' fraudulent use of Plaintiff's assets and cash to pay Defendant Aftermath for services which were not performed.

246.    Upon information and belief, Defendant Custom Stripe acted in close concert and cooperation with the Defendant-Employees to illicitly receive unjust enrichment resulting from Defendant-Employees' fraudulent use of Plaintiff's assets and cash to overpay for services.

247.    Upon information and belief, the Defendant-Wholesalers acted in close concert and cooperation with the Defendant-Employees to illicitly receive unjust enrichment resulting from Plaintiff's overpayment for used car inventory.

248.    As a result and consequence of Defendant Aftermath's conspiracy with the Defendant-Employees, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars.

249.    As a result and consequence of Defendant Custom Stripe's conspiracy with the Defendant-Employees, Plaintiff has been damaged in an in an amount to be determined at trial,

which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars.

250.    As a result and consequence of the Defendant-Wholesalers' conspiracy with the Defendant-Employees, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars.

251.    As a direct and proximate result of the Defendant-Employees' actions in all of the aforesaid conspiracies, Plaintiff has been damaged in an in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars.

252.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Aftermath in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

253.    Based upon the foregoing, Plaintiff is entitled to judgment against Defendant Custom Stripe in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

254.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Wholesalers in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

255.    Based upon the foregoing, Plaintiff is entitled to judgment against the Defendant-Employees in an amount to be determined at trial, which in no event is less than Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars, together with Plaintiff's attorneys' fees, costs and disbursements in connection with this action, and interest thereupon.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor,

(a) On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Causes of Action, as against Defendant-Employees, awarding damages to Plaintiff in an amount to be determined at trial, which in no event is less Two Million One Hundred Ninety-One Thousand Three Hundred Six and 46/100 ($2,191,306.46) Dollars;

(b) On the Fourth, Seventh, Eighth, Ninth, Eleventh, Fourteenth and Fifteenth Causes of Action, as against Defendant Custom Stripe, awarding damages to Plaintiff in an amount to be determined at trial, which in no event is less than Four Hundred Thirty-Five Thousand Three Hundred Sixty-Six and 46/100 ($435,366.46) Dollars;

(c) On the Fourth, Seventh, Eighth, Ninth, Eleventh, Fourteenth and Fifteenth Causes of Action, as against Defendant Aftermath, awarding damages to Plaintiff in an amount to be determined at trial, which in no event is less than Fifty-One Thousand Eight Hundred Seventy-Five and no/100 ($51,875.00) Dollars;

(d) On the Fourth, Seventh, Eighth, Ninth, Eleventh, Fourteenth and Fifteenth Causes of Action, as against Defendant-Wholesalers, awarding damages to Plaintiff in an amount to be determined at trial, which in no event is less than Six Hundred Eighteen Thousand Three Hundred and 03/100 ($618,300.03) Dollars;

(e) On the First, Third, Sixth and Seventh Causes of Action, awarding exemplary and/or punitive damages against Defendant in an amount to be determined at Trial;

(f) Awarding Plaintiff its attorneys' fees, costs and disbursements in connection with this action; and

(g) That Plaintiff have such other and further relief as this Court deems just and proper.

DATED:     August 30, 2019
            Albany, New York

                    Respectfully submitted,

                    TOWNE, RYAN & PARTNERS, P.C.

By:              _____

                    John A. Musacchio, Esq.
                    Bar Roll Number: ct30711
                    *Attorneys for the Plaintiff*
                    P.O. Box 15072
                    450 New Karner Road
                    Albany, New York 12212-5072
                    Tel. No.: (518) 452-1800