UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUTO WORLD AUTOMOTIVE SUPERSTORES, INC., : : : *Plaintiff*, : : v. : No. 3:19-cv-1345 (SDV) : SALVATORE LIUZZO SCORPO a/k/a : SALVATORE KROEMER and ANTONIA : LENTINI a/k/a ANN LENTINI, : : *Defendants*. : | |

## RULING AFTER HEARING IN DAMAGES

Plaintiff Auto World Automotive Superstores, Inc., which does business as an auto dealership, brought this action alleging that its former general manager, defendant Salvatore Liuzzo Scorpo, conspired with thirteen co-defendants to defraud plaintiff. Scorpo's two primary alleged schemes were (a) causing plaintiff to pay for fictitious services from defendant Aftermath Stripes, LLC, a shell company owned by his mother, defendant Antonia Lentini, and (b) causing plaintiff to purchase used vehicles from wholesalers at inflated prices in exchange for a kickback and then altering and deleting internal accounts to conceal the misconduct. After Scorpo, Lentini, Aftermath, and defendant Chris Derrick failed to appear and defend, the Court (Chatigny, J.) granted plaintiff's motion for default judgment as to liability and referred the case for a hearing in damages. ECF 103. At plaintiff's request, that hearing was delayed while plaintiff litigated against the appearing defendants. ECF 154. Over time, plaintiff settled or abandoned its claims against all appearing defendants and consented to the jurisdiction of the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF 153, 247, 260. Plaintiff then voluntarily

dismissed its claims against Aftermath and Derrick, leaving Scorpo and Lentini as the sole remaining defaulted defendants. ECF 266. On August 30, 2023, the Court conducted a hearing in damages.[1] For the reasons that follow, the Court concludes that plaintiff voluntarily dismissed its sole claim against Lentini and, therefore, judgment cannot be entered against her. As for Scorpo, plaintiff's request for an award of $1,320,740 in compensatory and punitive damages is granted in part and denied in part.

## A. LEGAL STANDARD

A defendant who defaults admits liability as to all well-pleaded factual allegations in the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). However, a default is not an admission of damages, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the plaintiff must establish the amount of damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The court may conduct a hearing for this purpose. *See* Fed. R. Civ. P. 55(b)(2); *see also Greyhound*, at 158 (damages "usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount"); *cf. Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (court has discretion to rely on detailed affidavits or documentary evidence that provide a basis for the damages specified in the judgment). Although liability is deemed admitted for purposes of the damages determination, the court still must consider proximate cause in the sense that it may award only the damages that "naturally flow from the injuries pleaded." *Credit Lyonnais*, at 159.

---

[1] The Court has personal jurisdiction over Scorpo and Lentini via service of the summons and Complaint, ECF 11, 12, which alleges that they are residents of Connecticut, ECF 1 ¶¶ 3, 20. In an abundance of caution, the Court also ordered plaintiff to serve notice of the hearing in damages on Scorpo and Lentini via certified mail. ECF 262, 264-65. Neither defendant appeared at the hearing.

B.  DISCUSSION

1.  **Lentini**

There is no claim pending against Lentini on which the Court may enter a default judgment.  At the time that Judge Chatigny granted plaintiff's motion for default judgment, the operative pleading was the original Complaint.  *See* ECF 1, 103.  The only claim in the Complaint that mentioned Lentini was the RICO count,[2] *see* ECF 1, which plaintiff voluntarily dismissed after the motion for default judgment was granted.  ECF 153.

At the hearing in damages and in its post-hearing brief, plaintiff did not disagree with the Court's observation that, after dismissal of the RICO count, there was no explicit claim pending against Lentini.  However, plaintiff argues in the alternative that defendant Aftermath Stripes, LLC was the alter ego of Lentini and that the Court should pierce the corporate veil and hold her personally liable for Aftermath's conduct.[3]  Plaintiff submitted testimony and exhibits at the hearing in support of this theory.  However, the argument has two fatal flaws.

---

[2] The RICO count only obliquely referenced Lentini as follows: "The course of conduct by the Defendant-Employees, the Defendant-Wholesalers, Defendant Aftermath and Defendant Custom Stripe, by and through said Defendants' respective owners, principals, members, officers, managers, employees and/or agents, including Defendant Durie, Defendant Sejdiu, Defendant Lentini and Defendant Murphy (collectively, the "Defendants"), as set forth herein constitutes violations of 18 USC § 1962."  Subsequent paragraphs allege payments to Aftermath, the shell company formed by Lentini.  The Court need not analyze whether these allegations are sufficient to state a viable RICO claim given that plaintiff voluntarily dismissed that count.

[3] *See Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.*, 187 Conn. 544, 552 (1982) ("Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor.")  Although plaintiff voluntarily dismissed its claims against Aftermath, that arguably does not end the veil-piercing inquiry in light of two trial court decisions holding that the corporation is not an indispensable party to a veil-piercing claim under Connecticut law.  *See Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 505 (D. Conn. 2006) (citing *Andrews v. Caron Bros.*, No. 45136, 1992 WL 67396, at *7 (Conn. Super. Ct. Mar. 26, 1992)).  The Court looks to state law for the substantive requirements of veil piercing in this instance because the claims against Aftermath all arose under state law,

3

*First*, the allegations in the Complaint do not make out a claim that Lentini was personally liable for Aftermath's actions under a veil-piercing theory. [4]  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *Mickalis Pawn*, 645 F.3d at 137.  The court "is required to accept all of the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but it is also required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Mirlis v. Greer*, 80 F.4th 377, 383 (2d Cir. 2023) (quotation marks and brackets omitted).  In other words, a default results in liability only for claims adequately alleged in the complaint.  This is consistent with the principle underlying Rule 54(c) that "unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings [and so] a default judgment may not extend to matters outside the issues raised by the pleadings[.]" 10 Charles Alan Wright et al., Federal Prac. & Proc. § 2663 (4th ed. 2014) (citations omitted).  Accordingly, the Court cannot enter a default judgment against Lentini based on a veil-piercing theory that was neither actually nor adequately alleged in the Complaint. [5]

---

with the exception of the RICO claim that plaintiff voluntarily dismissed.  *Cf. Bhd. of Locomotive Engineers v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26 (1st Cir. 2000) (federal common law provides veil piercing standard only where claim involves federal statute that demands national uniformity), *cited in United States v. Peters*, 732 F.3d 93, 103 n.4 (2d Cir. 2013).

[4] *See Angelo Tomasso*, 187 Conn. at 552-54 (veil piercing appropriate where corporation was a "mere instrumentality or agent of another corporation or individual owning all or most of its stock" (instrumentality rule) or there was "such a unity of interest and ownership that the independence of the corporation[] had in effect ceased or had never begun" (identity rule)).

[5] *See, e.g.*, *Lamaka v. Russian Desserts Inc.*, No. 18-cv-354 (ILG)(VMS), 2021 WL 2188280, at *6-7 (E.D.N.Y. Feb. 12, 2021) (declining to award damages against defaulted defendant for week of unpaid work not alleged in complaint), *report and recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); *Renaissance Search Partners v. Renaissance Ltd., L.L.C.*, No. 12-cv-05638 (DLC)(SN), 2014 WL 12770400, at *9 (S.D.N.Y. July 3, 2014) (declining to

*Second*, even assuming that the Complaint stated a veil-piercing claim against Lentini, it neglected to demand any relief from her.  It is well established that "any default judgment must be limited to the relief that was demanded in the pleadings at the time the default was entered; a plaintiff may not increase the relief demanded after the defendant defaults without amending the complaint and giving the defendant another chance to appear."  *See Mack v. No Parking Today, Inc.*, No. 1:16-cv-3986 (ARR)(CLP), 2019 WL 337096, at *2 (E.D.N.Y. Jan. 28, 2019); *see also* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (Rule 54(c) "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer").  In the present case, although the demand for relief in the Complaint specified the type and amount of relief sought from particular co-defendants and groups of co-defendants, it conspicuously did not indicate what type or amount of recovery plaintiff sought from Lentini.  Consequently, even assuming there were a claim pending against Lentini, the Court could not award damages against her in a default judgment.  For all these reasons, plaintiff's request for damages against Lentini is denied.

**2.  Scorpo**

In its post-hearing brief, plaintiff requests judgment against Scorpo for $1,293,195 in compensatory damages resulting from the used vehicle kickback scheme and $27,545 in

---

issue injunction against defaulted defendant under Lanham Act where complaint sought only monetary damages under state law), *report and recommendation adopted*, 2014 WL 4928945 (S.D.N.Y. Oct. 1, 2014).

attorney's fees as punitive damages. [6]  At the time that the Court granted plaintiff's motion for default judgment, the pending claims against Scorpo in the original Complaint were:

| | |
|---|---|
| Count One | Fraud in Connection with Computers (18 U.S.C. § 1030(a)(4)) |
| Count Two | Economic Espionage Act (18 U.S.C. § 1836) |
| Count Three | Stored Communications Act (18 U.S.C. § 2707) |
| Count Five | Statutory Theft (Conn. Gen. Stat. § 52-564) |
| Count Six | Conversion |
| Count Seven | Fraud |
| Count Eight | Negligent Misrepresentation |
| Count Nine | Tortious Interference with Business Relations |
| Count Ten | Breach of Fiduciary Duty |
| Count Eleven | Unjust Enrichment |
| Count Twelve | Computer Offenses (Conn. Gen. Stat. §§ 52-570b, 53a-251) |
| Count Thirteen | Unauthorized Use of Computer (Conn. Gen. Stat. §§ 53-451, 53-452) |
| Count Fourteen | Larceny by Trick |

*See* ECF 1.

### a. Federal claims

Plaintiff is not entitled to damages on the federal claims in Counts One, Two, and Three. Plaintiff has expressly abandoned its Count One claim for damages for computer fraud under 18 U.S.C. § 1030(a)(4). *See* ECF 287 at 5. As for Counts Two and Three, the allegations in the Complaint do not establish the defendant's liability as a matter of law. *See Mirlis*, 80 F.4th at 383 (on default, court accepts factual allegations as true and draws all reasonable inferences in plaintiff's favor but still must determine whether the allegations establish liability as a matter of law). Regarding the Count Two claim for misappropriation of trade secrets under 18 U.S.C. § 1836, even assuming that plaintiff's inventory data qualified as a trade secret within the meaning of the statute, plaintiff's claim that Scorpo altered inventory accounts to cover his tracks does not

---

[6] This request conforms to Rule 54(c) insofar as it does not "differ in kind from, or exceed in amount, what [was] demanded" in the Complaint. ECF 1. In fact, it is less than the original demand.

amount to misappropriation as that term is defined in the statute. *See* 18 U.S.C. § 1839 (defining misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent by a person who" knew the disclosure was improper). Similarly, Count Three does not state a viable claim for unauthorized access to stored communications under 18 U.S.C. § 2707 because although it alleges that Scorpo altered inventory accounts without authorization, that data did not constitute stored communications within the meaning of the statute. *See* 18 U.S.C. §§ 2701(a), 2711(1), and 2510(1) and (12). The Court will therefore vacate the ruling granting default judgment on Counts Two and Three and will dismiss those claims. [7]

### b. Compensatory damages

Turning to the state law claims in Counts Five through Fourteen, Plaintiff has established to a reasonable certainty that it incurred losses of $1,293,195 as a result of Scorpo's used vehicle kickback scheme. As alleged in the Complaint and deemed admitted, Scorpo caused plaintiff to purchase used vehicles from wholesalers at inflated prices in exchange for a kickback, and then altered and deleted internal inventory accounts to conceal the misconduct. ECF 1 at ¶¶ 47-50. Plaintiff's principal, William Lia, amplified in his hearing testimony that plaintiff had an established policy of not purchasing used vehicles from independent wholesalers. Tr. 21-22.

---

[7] The dismissal of these claims does not preclude the Court's exercise of supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a). There still is a federal claim insofar as Scorpo remains liable by default on Count One, even though plaintiff has declined to pursue damages under that count. And even if all the federal claims were dismissed at this late juncture, the Court would still exercise discretionary supplemental jurisdiction in the interest of economy, convenience, and fairness given that these proceedings are in their final stage. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (federal court should weigh values of judicial economy, convenience, fairness, and comity when deciding whether to exercise supplemental jurisdiction).

Instead, used vehicles were to be acquired only through auction, primarily including the Southern Auto Auction in Connecticut. *Id.* In 2017, Lia became concerned when a review of plaintiff's financial statements revealed that inventory values had increased dramatically over the prior year but that the number of vehicles had not increased at the same rate. *Id.* at 23. Upon investigation, plaintiff discovered that Scorpo, assisted by another employee, had manipulated inventory aging of vehicles he had bought at inflated prices, which was a statistic plaintiff closely tracked. *Id.* at 24-27. Specifically, Scorpo deleted those vehicles from inventory then added them back under a new stock number in order to restart the aging clock and conceal how long they had been sitting unsold on plaintiff's lot. *Id.* The investigation also revealed that when such vehicles were resold at a loss, Scorpo transferred the lost value to other vehicles in inventory in order to postpone plaintiff's realization of the loss and thereby conceal his misconduct. *Id.* These discoveries led plaintiff to investigate how those vehicles were acquired, at which point plaintiff found checks indicating that they had been purchased from wholesalers against company policy. *Id.* Scorpo was the sole employee responsible for purchasing used vehicles. *Id.* at 26-27.

Plaintiff also offered the written expert report and testimony of Stephen Ferraro, a certified public accountant and master analyst in financial forensics. *See* Tr. at 54-77; Ex 1. Ferraro calculated plaintiff's losses using the following method. Plaintiff's records show that plaintiff purchased 316 used vehicles from three wholesalers between February 2015 and September 2017. Ex. 1 at Schedule 1. Using VIN numbers and documentation obtained via subpoena, plaintiff determined that the wholesalers had acquired 188 of those vehicles from Southern Auto Auction and was able to calculate the difference between the cost that the wholesaler paid to acquire each vehicle at auction and the inflated amount that plaintiff then paid

8

for the same vehicle. *Id.* Ferraro then calculated each wholesaler's average profit margin on those sales and extrapolated it to the 128 other vehicles for which it lacked the wholesalers' acquisition cost data in order to estimate the amount that plaintiff overpaid on those vehicles. *Id.* In total, Ferraro concluded that plaintiff had paid $5,212,321 for vehicles that the wholesalers had acquired for $3,919,126, which resulted in a total loss of $1,293,195 under the reasonable assumption that plaintiff could have purchased the vehicles directly at auction without the middleman. *Id.* To cross-check this conclusion, Ferraro used plaintiff's records to calculate that it had incurred $752,892 in actual losses when it resold that inventory, *see id.*, and he subtracted that from the $1,293,195 overpayment number to conclude that plaintiff would have made a profit of $540,303 if it had purchased the vehicles at the auction price, which equates to a 13.8% margin. *See* Tr. at 66. [8] Ferraro testified that this is within the industry range of 8 to 18% profit margin for used cars at the time, *id.*, which bolsters the reasonableness of his damages analysis.

In summary, Ferraro reasonably concluded that plaintiff incurred $1,293,195 in what he called "diverted profits," which is comprised of the actual loss on resale plus the lost profit that plaintiff reasonably could have expected from that business activity. The Court finds that plaintiff has established to a reasonable certainty that these are the damages that resulted from the used vehicles scheme that Scorpo orchestrated. *See Credit Lyonnais*, 183 F.3d at 155 (upon default, court must ascertain amount of damages with reasonable certainty); *Carrano v. Yale-New Haven Hosp.*, 279 Conn. 622, 650 (2006) ("Proof of damages should be established with reasonable certainty and not speculatively[.]").

---

[8] In his oral testimony, Ferraro appears to have approximated the actual loss, lost profit, and lost profit margin amounts. Using the precise actual loss figure from the expert report, *see* Ex. 1 at Schedule 1, the Court was able to recreate the calculation and confirm that the lost profit margin was 13.8%.

### c. Reduction for settlement amounts

However, the Court will not assess the full loss amount against Scorpo because that would result in an excessive recovery to plaintiff insofar as it has already obtained partial recovery of the same losses via pretrial settlement with co-defendants. "[T]he rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury." *Mahon v. B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 663 (2007) (citation and quotation marks omitted), *cited in Negron v. Patriot Auto Sales, LLC*, No. 3:17-cv-583 (JCH), 2019 WL 13215535, at *8 (D. Conn. Jan. 7, 2019) (applying state law on double recovery to state law claim for damages). [9] Specifically, "the trial court may reduce the damages to account for pretrial settlement payments, whether in a trial to the jury or to the court, when the award would otherwise be excessive as a matter of law in the absence of such a reduction." *Menard v. State*, 346 Conn. 506, 526 (2023) (citing Conn. Gen. Stat. § 52-216a). That threshold "is met only when the total amount received so far exceeds what is fair and reasonable as to be unconscionable." *Mahon*, 284 Conn. at 665. The court must be mindful that a settlement represents, in part, an assessment of litigation risk and so is not a true measure of a claimant's fair, just and reasonable damages, and the settlement also may pertain to claims other than those against the current defendant in the pending action. *Menard*, at 526. Accordingly, prior settlements are not preclusive, *id.*, and the court must exercise its discretion in deciding whether to reduce a damages award based on prior settlements, *Mahon*, at 665.

---

[9] Plaintiff observes that there is a split of authority among district courts in the Second Circuit as to whether a defendant in default is entitled to a credit for settlements paid by co-defendants. *See Gov't Emps. Ins. Co. v. Ajudua*, No. 15-cv-5199 (MKB), 2018 WL 7252961, at *9 (E.D.N.Y. Dec. 18, 2018) (collecting cases), *report and recommendation adopted*, No. 15-cv-5199 (MKB)(RLM), 2019 WL 276201 (E.D.N.Y. Jan. 22, 2019). However, because all the damages claims arise under state law, state substantive law governs the issue of double recovery.

Turning to the present case, plaintiff's post-hearing brief clarifies that it is seeking compensatory damages from Scorpo only in connection with the used vehicles scheme involving Scorpo, his colleague, and three auto wholesaler companies. The Court has examined plaintiff's disclosure of reported settlements, criminal restitution, and insurance benefits received and has excluded the recoveries that pertain to other defendants or other alleged conduct. [10] The settlements that relate to the used vehicle scheme total $435,000, which means that plaintiff has already recovered more than one-third of its economic loss of $1,293,195 from that scheme. "Connecticut courts have indicated that deducting settlement payments from a judgment amount is more appropriate when a plaintiff's loss is 'readily ascertainable and absolute,' and the judgment amount 'constitute[s] a legally unassailable determination of fair compensation.'" *Negron v. Patriot Auto Sales, LLC*, No. 3:17-cv-583 (JCH), 2019 WL 13215539, at *16 (D. Conn. May 7, 2019) (quoting *Mahon*, 284 Conn. at 668-69, 670); *accord. Mauro v. Yale-New Haven Hosp.*, 31 Conn. App. 584, 588-89 (1993). That is true in this case given that the injury was economic rather than, for example, a personal injury. *Cf.*, *e.g.*, *Densberger v. United Techs. Corp.*, 125 F. Supp. 2d 585, 509-604 (D. Conn. 2000). Moreover, while not minimizing Scorpo's role in orchestrating the scheme, the reprehensibility of his conduct is addressed in the award of punitive damages below. Removing that from the equation and assessing the compensatory damages award solely from the perspective of economic fairness, the Court concludes that it would exceed what is fair and reasonable to provide a partial double recovery to plaintiff by requiring Scorpo to pay three times what his four co-conspirators paid in the aggregate. *Cf. Gionfriddo v. Gartenhaus Cafe*, 211 Conn. 67, 74-75, 557 A.2d 540, 544 (1989)

---

[10] The Court did not include the portion of the settlements relating to a scheme to install aftermarket products on vehicles without authorization from customers.

("The general rule [is] that there can be but one satisfaction of damages, and where judgments are rendered against different persons for the same cause of action, payment of one is a satisfaction of all.") (cleaned up).  For these reasons, the Court will deduct $435,000 from plaintiff's calculated loss of $1,293,195, resulting in total compensatory damages of $858,195.

### d. Punitive damages

Plaintiff also seeks recovery of attorney's fees in the amount of $27,545 as punitive damages.  Punitive damages are available under several of the state law claims against Scorpo, including most obviously the Count Six claim for fraud.  *See* ECF 1.  Connecticut law provides for the recovery of punitive damages where "the evidence . . . reveal[s] a reckless indifference to the rights of others or an intentional and wanton violation of those rights."  *See Venturi v. Savitt, Inc.*, 191 Conn. 588, 592 (1983).  The allegations in the Complaint, which are deemed admitted upon default, and the evidence adduced at the hearing, including the testimony of William Lia described above, demonstrate that Scorpo intentionally injured plaintiff insofar as he deliberately exploited his position of trust as plaintiff's general manager to orchestrate fraudulent schemes to enrich himself to plaintiff's detriment.

Regarding amount, punitive damages are limited under Connecticut law to "expenses of litigation less taxable costs," including attorney's fees, *see Berry v. Loiseau*, 223 Conn. 786, 827 (1992).  To determine reasonable attorney's fees, courts multiply "a reasonable hourly rate by the number of reasonably expended hours."  *See Bergerson v. New York State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011).  The fee applicant must "submit appropriate documentation to meet the burden of establishing entitlement to an award. . . .  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in

calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). In this case, plaintiff has limited its request to time spent pursuing the damages component of the default judgment between January 30 and September 20, 2023 and has submitted supporting documentation. The Court has reviewed the fee affidavit and billing records submitted by plaintiff's counsel and finds that the hourly rates and number of hours expended were reasonable. The Court therefore grants plaintiff's request for $27,545 in punitive damages.

### C. CONCLUSION

Based on the foregoing, plaintiff's request for damages is granted in part and denied in part. The Court concludes that the sole claim against Lentini was previously dismissed and so denies plaintiff's request for a damages judgment against her. Additionally, the Court vacates the prior ruling granting the motion for default judgment against Scorpo as to Counts Two and Three, *see* ECF 103, and dismisses those claims. As to the remaining claims, the Court awards compensatory damages against Scorpo of $858,195 and punitive damages of $27,545.

The Clerk is directed to enter judgment for Auto World and against Scorpo in the total amount of **$885,740**. Auto World may make a motion for costs under Rule 54(d) within fourteen days from the entry of judgment.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 17th day of October, 2023, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge